Our first argued case is Realtime Adaptive Streaming v. Sling TV, D.I.S.H., 2021-22-68. Mr. Liddell. Thank you, Your Honor. Good morning, and may it please the Court, Brian Liddell from Roth, August, & Cabot on behalf of the appellant Realtime Adaptive Streaming. The district court in this case made two critical errors in its Section 101 analysis, each of which independently warrant a reversal here. Both at Step 1, the directed-to inquiry, and at Step 2, the inventive step or inventive concept inquiry, the district court made significant errors that are each independently sufficient to support reversal. At the Step 1 inquiry, the district court actually didn't clearly identify what it was identifying as the supposed idea to which the claim was directed. It seemed to recite the formulation offered by the defendant. To the extent that that's what it was accepting, that formulation, which recited selecting a data compression technique based on characteristics of the data or words to that effect, that oversimplifies and ignores significant elements of the claim and fails to capture the inventive concepts that are contained therein. Counsel, has this patent expired? This patent, Your Honor, I believe has expired at this time. Let me just confirm. That goes back to 2002. Yes, that is my understanding. Is there other litigation going on other than the underlying district court suit? I don't believe there remains any other district court litigation on this particular patent.  Has this oral-related patent been invalidated prior off? There is a PTAB appeal process from an ex parte re-exam that has issued a decision on invalidity. That is still subject. It was very recently issued. It's still subject to appeal and discussion before this court. Just to get the label in. Of course. Did the PTO find it invalid? The PTO did find it invalid. Not anything to do with Section 101. They were prior art issues. And notably, the PTO applied a much broader construction of one of the key terms, the throughput term, than the district court here. Indeed, the PTAB characterized an even broader construction than the district court's construction as the narrower version that it was not adopting. The PTAB used a construction that contemplated throughput as a pre-existing condition of a communication channel, essentially the fixed state of how much data could pass through it, as opposed to the district court's construction, which referenced pending requests or pending access requests, which is a more dynamic and changeable characteristic of a communications channel. And that's what the specification discusses as well. That's also a subject of dispute with the PTAB, obviously, but not for this appeal particularly, because the construction here was not challenged in this appeal. Just another lay-of-the-land point. There's no dispute over the representative claim analysis. We only have to consider Claim 1, right? I would disagree with that in the sense that I think we've discussed both Claims 1 and 9. 9 is obviously very similar to Claim 1. It does include some additional aspects that seem to have been— Do you make an argument in the blue brief that the district court erred in treating Claim 1 as representative? Yes, and we discussed Claim 9, for example. Well, it's noted on the cover of the blue brief or the inside cover, but also page 45 of the blue brief addresses Claim 9. So we did discuss that. I think, as I noted, they are very similar. Claim 9 is obviously an apparatus claim that includes aspects of the controller and how the controller functions within the system to perform some of these aspects. But if Claim 1 is ineligible because it's abstract, then Claim 9, just adding a controller, doesn't make it eligible, right, under our precedent? I think that's probably correct, that the two are similar enough. I would disagree, obviously, that Claim 1 is abstract. I guess I'm just trying to understand if you're arguing that there's any distinction and that 9 can stand if 1 falls. Well, to the extent that the argument is made and advanced, and I think my friend advances this argument in its brief, that the system is purely sort of an abstract mental process, not tied to computers, things of that nature. I think Claim 9 is different in that respect. That Claim 9 is very clearly a system claim within a computer system. The controller does anchor that in computer technology. We think Claim 1 is obviously also anchored in computer technology, and that's clear from both the specification and the claim. Well, I understand that, but saying it's anchored in computer technology doesn't make it eligible if it's just a do-it-on-a-computer claim. Agreed, and this is not a just do-it-on-a-computer claim. No, no, no, but I didn't really get a clear answer. If 1 is invalid because it's an abstract idea and there's no additional inventive concept, then 9 is ineligible too because it's just done on a controller. Are you arguing something else? No, I think I understand your point, Your Honor. I think that's correct. Like I said, the only hesitation I have is if we're talking about suggesting that 1 is abstract because it's untethered to computer technology in some way, and I don't think that was Your Honor's point, that would be a distinction, but otherwise, no, I think that's correct. Most of the briefing is directed to Step 1, but I'm concerned about Step 2. You seem to think that there is some material fact dispute. Tell me as best as you can, what is that material fact dispute, and is it genuine? Is there really enough evidence in the record that a reasonable jury could side with you on it? Yes, Your Honor, and thank you. I think much like the various of this Court's cases, including cooperative entertainment, this is a case that does have significant fact issues at Step 2 that the district court failed to even acknowledge. The evidence in the record, I think there were a number of things, but the most significant I would point to is the opinions offered from Dr. Ryan, the expert for real time. He offered a number of opinions about this. I think perhaps the most significant with respect to Step 2 is found at paragraph 1297 of his submission, which is at page 3075-76 of the appendix. And he's explaining why the combination of elements within the claim, the ordered combination of this claim, was unconventional and really differed from the conventional configurations of compression systems in the art. He notes that conventional systems essentially use a one-size-fits-all compression approach in which compression was always performed to just get the sort of smallest resulting size of data. In other words, whatever gets you the most compression, that's all you do. And he noted that it was a very distinct and different approach and an inventive approach to alter that compression system by looking at both the nature of the data that's being compressed and the throughput of the system as it's being compressed to alter the compression that's used to perhaps use one that maybe doesn't compress it as much but avoids bottlenecks in the system by compressing it faster. That sounds to me like you're saying your expert said the abstract idea was unconventional. I know you disagree on Step 1, that this is an abstract idea, but let's assume that we agree with the district court that as a matter of law, the idea of selecting a compression algorithm based upon what kind of input is coming in to toggle back and forth is an abstract idea. What you just said is your expert said choosing between the two is unconventional, but that's the abstract idea. That's not enough at Step 2, is it? Well, so two things. You don't need to argue on Step 1. I get it. You have an argument on Step 1. We can talk about that. But assuming that Step 1 is abstract, what additional inventive concept is there in this patent, in either of these claims, beyond just the idea of what it says here, choosing between compression algorithms based upon certain parameters? So, and I think the two are interrelated, obviously, because the supposed abstract idea the district court relied on was choosing a compression algorithm based on a characteristic of the data, i.e., some parameter or information about the data. And what Dr. Ryan is talking about is there's something more in the claim than that, because the claim doesn't just look at a characteristic of the data. It also looks at the system's ongoing throughput, the number of pending requests, and may use what is not the optimal compression algorithm based on the characteristic of the data if the status of the system, the throughput, has changed to a condition that would warrant a different algorithm or a different compression approach. And that's not part of the district court's formulation of the abstract idea at all. The district court completely omitted that and left out that key claim element, which is a Step 1 problem as well. But if we accept the district court's formulation for Step 1, what Dr. Ryan is talking about is there's more to the claim than that that should be considered in Step 2. You can't change the abstract idea approach for Step 2 and sort of look at it one way for 1 and a different way for 2. I'm still having a problem understanding why what you're telling me is just not abstract. I mean, usually when these kind of claims survive, and they rarely do, it's because there's a specific implementation and it tells you in detail what the parameters are and when you change the parameters. This just has very general things saying here are a bunch of categories, not even a bunch of categories, but there's categories, and you choose between them based upon parameters. But it doesn't tell you how. It just gives you the idea of doing it. And this seems to me quintessentially within all of our 101 jurisprudence. So I would disagree with that on a couple steps, Your Honor. First of all, it does tell you how. It tells you that you might have a set of compression algorithms or compression approaches that might fit particular data types and that you change those based on the system conditions. And it does describe how you make those changes. Where in the claims does it do that? So the claims describe making the changes. The advantages of doing so and the reasons why and the ways in which you do so are elucidated extensively in the specification. For example, at columns 13 and 16, the patent has a lengthy discussion of how you might decide, as one example, that if the compression algorithm is an asymmetric algorithm that is very slow to compress but fast to decompress, that's an advantageous algorithm to use during compression if there's not a backup in the system. But if the system backlogs, that can create problems and you should switch to, for example, a symmetric algorithm that is faster in the compression step so that it resolves that bottleneck, even though you might not be achieving as an ideal level of compression on the storage side. None of that's in the claims, though. I would disagree that that's not in the claims. Can you point me to the language in the claims? Is that idea about the system and the specifics of the different algorithms and stuff like that? Well, the claims speak to having multiple compression algorithms available, of having asymmetric algorithms, which the specification explains can often be slower to compress, faster to decompress, as I was just discussing, and that you select the algorithm you're using based not only on the characteristic of the data but on the throughput of the system, which the district court defined as the pending number of requests or data access requests in the system. So I do think those things are in the claim. Counsel, you're well into your rebuttal time. You can save it or continue. I'm happy to save it, Your Honor, and return at rebuttal. Thank you. Mr. Scharzer. Good morning, Your Honors. Adam Scharzer on behalf of the Dish and Sling appellees. May it please the Court. Your Honors, I'd like to go straight to Judge Stark's question with respect to whether there is, in fact, a genuine issue here. And I'll start where Mr. Liddell started, which was at, I believe it was 3075 in the appendix, and this is Dr. Bovik's opinions offered with respect to their opposition to the summary judgment motion at 1297. At 1297, Dr. Bovik is discussing the ordered combination, but no specific ordered combination. The words just sort of appear there, but they're not tied to any specific ordered combination. Dr. Bovik goes on to discuss things like secondary indicia of non-obviousness, other patents that appeared later in the field. But there is nothing in this expert report that's tied to the claim language or the specific ordered combination, or even the throughput, the throughput limitation perhaps being unconventional in and of itself. Did the district court consider this expert opinion that the plaintiffs offered? So in the opinion itself, Judge Jackson did not specifically cite back to Dr. Ryan's report here. That very well could have been because Dr. Ryan's report, which was offered with the opposition, was actually offered months earlier, months before Dr. Bovik's declaration in support of Dish's summary judgment motion. So what happened there was that counsel for real time snippeted out portions of Dr. Bovik's months earlier expert report and then presented that as the rebuttal. Doesn't the district court have an obligation – this was a summary judgment motion, right? Correct, it is a summary judgment. So doesn't the district court have an obligation to consider all the evidence presented to it in the record, draw all inferences, reasonable inferences against you as the non-moving party, and then say, is there a factual dispute that the jury could go either way on as to whether step two is satisfied or not? Doesn't the district court have to do that and did it do it here? So two points. Yes, the district court certainly has an obligation to apply the typical standards under summary judgment that you recited there, Judge Stark. But the district court here also, under this case, this court's decision in CX loyalty – or CX loyalty, I believe – does not have an obligation to further consider Ipsy-Dixy expert opinions offered with merely conclusory observations regarding ordered combinations and nothing specific explaining the specific order combination or how or why that order combination – that it's rejecting that expert testimony as purely Ipsy-Dixy or conclusory. And did the district court do that here? I don't think the district court has to tell us that in a specific opinion. The district court did not do that here. And that dovetails into the second point I wanted to make, Your Honor, which is going back to sort of the step one analysis that we were discussing. It's not just the recitation of the abstract idea that appears at page five of the appendix. Also, Judge Jackson, at page 11 of the appendix, he considered this throughput limitation. And he said, selecting the impression algorithm based upon the throughput is itself an abstract idea. And we know from this court's precedent that the abstract idea cannot alone supplant any other normal type of unconventional solution at the step two analysis. And so having determined that the throughput limitation itself and selecting a compression algorithm based upon throughput was itself abstract, there needed to be something more in the record. Now, when we talk about something more in the record and what Realtime actually pointed to, I want to take the court to Realtime's arguments below. And this is in your appendix at page 3015. So below, Your Honors, Realtime argued that the ordered combination was asymmetric compressors, two or more compressors, and selecting compressors based upon a parameter of video or audio data and a throughput of the communications channel. Those claim limitations, compressors, do not appear in the 610 patent. Those limitations appear in other patents. But to the extent Realtime was pointing to claim language that does not appear in the 610 patent, the court was not required to consider that. And certainly with respect to Dr. Bovik's opinions, his opinions were not specifically tied to what Realtime told us was its ordered combination. And therefore, there's no error with respect to the district court's decision here in not citing Dr. Ryan's Ipsy Dixit testimony. Dr. Bovik's your expert, right? Dr. Bovik is Dixon Sling's expert, yes. Right. So help me on this. At page 813, the district court says, I find Dr. Bovik persuasive. My interpretation of the 610 patent and the cases cited in this order is buttressed by certain opinions of Dr. Alan Bovik, which I find to be persuasive. Can a district court do that on a summary judgment motion, find the moving parties expert persuasive? I don't think the district court is necessarily supposed to weigh the evidence. I think the question is whether there is a genuine issue of material fact. And here there is just no genuine issue. So even if it were, if he did consider it persuasive, there was no genuine issue with respect to what was left on the evidentiary record. And so ultimately that's what drove the district court's conclusion here is not just the abstractness of the sort of abstract idea of step one, but also that the throughput limitation in and of itself was also abstract. And having failed to provide an actual order, I'm sorry, an order combination that actually exists in the claims, there was an error here by the court in not considering that further. This court reached the same conclusion in Hawk Technology. There, Hawk made the argument that the order combination had not been considered. And Chief Judge McCalla of the Western District of Tennessee, in his opinion, in fact, didn't set forth an ordered combination analysis. And what this court determined is that there was no error there because the patentee had failed to set forth particularly what their ordered combination was. Just as occurred here in this briefing, in the blue brief, where the same compressor limitations were set forth that don't exist in 610 patent. And the concession was made in the gray brief at pages 25 and 26. Unless there are further questions from the court. I've got a couple more. Real-time analogizes this case, I think, to visual memory. Why is that analogy not persuasive in your view? So that analogy is not persuasive because the visual memory claims included a specific hardware structure tying the processor there to various memories and cache memories. There was a prefetch cache. I think there was a couple of different cache memories. And the inventive concept there was being able to use a processor which would dynamically understand how to store different data at different levels in different caches. And so that particular – those particular claims were not abstract at step one. And that's not this case here. This case falls squarely within step one. One more. Help me on this. The district court wrote at page 814, the absence of details as to how the invention would work is evident without resort to any disputed issues of fact. What do you think that means? Well, I think that means that when we look to the claim language, the claim language does not have the detail about how this invention would work or why it would resolve what Mr. Liddell states is the bottlenecking problem. This court heard about the bottlenecking problem in the two-way media case. It was argued – I think the argument – it was at 11 minutes and 25 seconds in that argument. And bottlenecking did not persuade the court in two-way media, and it shouldn't here as well. Thank you. Just one point of housekeeping. If the court were to write in this case, at the great brief at page 30, real time raises an argument for this the first time with respect to claim four. And I just want to note for the court that claim four was not asserted, and it is not a part of the record on the appeal. Just for purposes of a little bit of housekeeping there. Thank you, Your Honors. Thank you, counsel. We'll rest on the briefs. Mr. Liddell has a couple minutes. Thank you, Your Honor. I think a couple of points. First of all, getting back to this question about the step two inquiry, it is clear from the record, and I think Judge Stark's questions are well taken, that the district court did not appear to even consider the evidence presented by the patentee about the inventive concept and the distinction from the supposed abstract idea. I would also argue that as to step one, and something my friend addressed, the analysis of the claim and then the separate analysis of the throughput limitation as a different analysis or asserting that that by itself is an abstract idea is not an analysis of the claim as an ordered combination. It's an analysis of independent elements that is not what this court mandates. And finally, I think to your question about visual memory, this case is very analogous to visual memory in many respects. I think the claim there does not recite many of the things that were argued a moment ago by my friend. And further, I think there's a little bit of having it both ways in the briefing, in the red brief. Visual memory noted that it's appropriate to look to the specification to understand what the claims are directed to as part of the step one analysis, what problems they're addressing are those technical problems, and pointed to a great deal of material in the specification, including computer code that wasn't part of the claims, as being important to understanding that analysis. Here, on the flip side, my friends argue in their red brief that we have to look only at the claims and we should never look to the specification, though they distinguish visual memory by pointing to things that are in the specification. We think that the information in the specification does inform the problem and the technical nature of the problem to which these claims are directed. I'm happy to answer any questions if there are further. As you noted, your real time is now zero. Thank you, Your Honor. Case is submitted.